<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

**Filed / Docketed**
**September 25, 2007**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GIT-N-GO, INC., | ) | **Case No. 04-10509-R** |
| | ) | **Chapter 11** |
| Debtor. | ) | |

| | | |
|---|---|---|
| MARLA C. REYNOLDS, TRUSTEE | ) | |
| of the GIT-N-GO, INC. | ) | |
| CREDITORS' LIQUIDATION | ) | |
| TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **Adv. No. 06-01113-R** |
| | ) | |
| GWENDOLYN HASKINS, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

This adversary proceeding came before the Court for hearing on August 7, 2007, on the Plaintiff's Motion for Summary Judgment and Brief in Support filed by Plaintiff Marla C. Reynolds, Trustee of the Git-N-Go, Inc. Creditors' Liquidation Trust (the "Trustee") on September 18, 2006 (the "Motion")(Adv. Doc. 21), with respect to the Trustee's Complaint to Avoid Preferential Transfers and to Recover Amount of Such Transfers under 11 U.S.C. §§ 547(b) and 550, and Defendant's Response to Plaintiff's Motion for Summary Judgment and Brief in Support filed by Defendant Gwendolyn Haskins ("Haskins") on October 24, 2006 (the "Response")(Adv. Doc. 28). In the Response, Haskins's counsel alleged that

Haskins "is not a competent person" and "[a]s an incompetent person she should have a guardian appointed for her in this matter[,]" however, "[t]o date, no such guardian or other person has been appointed by this court to protect the Defendant."  Response at 1-2.  On December 19, 2006, the Court entered the Order Setting Hearing Pursuant to Bankruptcy Rule 7017 and Rule 17(c) of the Federal Rules of Civil Procedure to consider Haskins's competency and whether a guardian ad litem should be appointed (the "Order Setting Competency Hearing").[1]  On January 12, 2007, the parties filed the Parties' (i) Notice of Consent to Appointment of Guardian Ad Litem for Defendant; (ii) Application for Order Appointing Guardian Ad Litem and Striking [the] Hearing; And (iii) Application to Hold Plaintiff's Motion for Summary Judgment and Defendant's Response Thereto in Abeyance Until Further Notice by the Parties (the "Joint Notice and Application").  Adv. Doc. 31.  On January 16, 2007, the Court granted the parties' Joint Notice and Application and entered an order appointing F.L. Dunn III as guardian ad litem for Haskins for purposes of this

---

[1] In the Order Setting Competency Hearing, the Court stated–

> [n]either party has moved for the appointment of a guardian ad litem for Defendant and no evidence has been presented to establish Defendant's alleged lack of competence.  However, because Defendant's counsel has raised Defendant's competence as a defense, the Court must determine whether Defendant is competent, and if not, whether a general guardian has been appointed for Defendant, and if not, either appoint a guardian ad litem for Defendant for the purpose of protecting Defendant's legal rights in this litigation, or enter an order that will otherwise insure that Defendant's interests are protected.

Order Setting Competency Hearing at 2, Adv. Doc. 29

adversary proceeding.  <u>See</u> Adv. Doc. 32.  On July 15, 2007, pursuant to the Court's sua sponte order requiring a status report, the Trustee filed the Plaintiff's Status Report (the "Status Report").  Adv. Doc. 35.  In the Status Report, the Trustee asserted that she contacted counsel for Haskins on numerous occasions in attempt to determine the status and ripeness of the proceeding and requested that the Court set the Motion and Response for Hearing.  <u>See</u> Status Report at 1-2.  On August 7, 2007, during the hearing held on the Motion and Response, the parties declined to present oral arguments, and Haskins's counsel confirmed that he conferred with Mr. Dunn and that this matter is ripe for disposition.

## I.    Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(F); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.[2]

---

[2] In the Response, Haskins asserted that "[a]s an Article II court, this Court may not hear this issue and/or grant a summary adjudication" and that the Trustee's Motion "should be denied for lack of jurisdiction in this Court" in accordance with 28 U.S.C. § 157 and the holding in <u>Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982). In <u>Marathon</u>, the Supreme Court declared it unconstitutional for Congress to grant bankruptcy judges full judicial power over controversies not within "the core of the federal bankruptcy power." <u>Id.</u> at 71. This matter constitutes a "core" bankruptcy proceeding under 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(F), and this Court has jurisdiction as set forth above.

## II.    Summary of the Parties' Contentions

In her Motion, the Trustee contends that the material undisputed facts establish that Haskins received a preferential transfer of $29,000 and that such transfer is avoidable and recoverable by the Trustee pursuant to Sections 547(b) and 550 of the Bankruptcy Code.[3]

In her Response, Haskins asserted that the subject transfer was not a preferential transfer under Section 547(b) and, or in the alternative, the transfer is excepted from the Trustee's avoidance powers because such transfer constituted a contemporaneous exchange for new value under Section 547(c)(1).

## III.    The Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056. "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit." Adams v. Am. Guarantee and Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000), citing Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare

---

[3] The underlying bankruptcy case was filed on January 30, 2004, prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109-8, 119 Stat. 23 (Apr. 20, 2005). Thus, all section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as they existed prior to the effective date of BAPCPA (generally effective October 17, 2005). With certain exceptions not relevant here, the BAPCPA amendments "shall not apply with respect to cases commenced under title 11, United States Code, before the effective date of this Act." BAPCPA, Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (2005). However, the Court notes that BAPCPA did not change or alter the applicable provisions discussed herein.

Corp., 220 F.3d 1184, 1190 (10th Cir. 2000).  "An issue is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence presented." Id., quoting Horizon, 220 F.3d at 1190.

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  If the movant has the burden of proof on the claim at issue, "the movant must establish every element of its claim or defense by sufficient, competent evidence to set forth a prima facie case." In re Ribozyme Pharm., Inc., Sec. Litig., 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002), citing Fed. R. Civ. P. 56(c) and (e)(other citations omitted).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), once the moving party has made a properly supported motion for summary judgment, the non-moving party may not rest on mere allegations or denials but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (emphasis added), quoting Fed. R. Civ. P. 56(e).  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." Adams, 233 F.3d at 1246 (citation omitted).  "[C]onclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence." Rexrode v. Allstate Indem. Co., No. 06-CV-00887-REB-CBS, 2007

WL 2288190, at *1 (Aug. 9, 2007), *citing* Rice v. United States, 166 F.3d 1088, 1092 (10th Cir. 1999)(other citation omitted).

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Reasonable inferences that may be made from the proffered evidentiary record should be drawn in favor of the nonmoving party. See Adams, 233 F.3d at 1246 (citation omitted). However, "[i]f the [nonmoving party's] evidence is merely colorable or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(citation omitted). Conversely, even where a movant's facts are undisputed, if two reasonable fact-finders could reach different conclusions or "ultimate inferences" from the undisputed facts, summary judgment is not warranted. See Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1382 (10th Cir. 1980)(citations omitted).

Local Rule 7056(a) provides that a motion for summary judgment shall include or be accompanied by a brief in support which contains a concise statement of material facts (as to which the movant contends no genuine issue exists) set out in separately numbered paragraphs referring with particularity to those portions of the record (attached or in a separate appendix) upon which the movant relies followed by the movant's argument and

6

authorities.  See Bankr. N.D.Okla. LR 7056(a).  Local Rule 7056(b) places a similar burden

on the non-movant and provides that:

> The response brief shall begin with a section stating, by
> paragraph number, each of the movant's facts to which the non-
> movant contends a genuine issue exists, and shall refer with
> particularity to those portions of affidavits, discovery materials,
> pleadings, and other relevant parts of the record before the Court
> upon which the non-movant relies to dispute the movant's fact.
> All material facts set forth in the movant's statement shall be
> deemed admitted for the purpose of summary judgment unless
> *specifically* controverted by a statement of the non-movant that
> is *supported by evidentiary material*.

Bankr. N.D.Okla. LR 7056(b)(emphasis added).

## IV.    The Record on Summary Judgment

In support of her Motion, the Trustee submitted exhibits generally described and

identified as follows:

Exhibit 1        Defendants [sic] Response to [the Trustee's] First Set of Interrogatories,
Admissions and Request for Production of Documents;

Exhibit 2        Affidavit of Marla C. Reynolds, Trustee of the Git-N-Go, Inc. ["GNG"]
Creditors' Liquidation Trust, which references and includes Exhibits A
through L:

Exh. A          Haskins's state court petition against GNG;
Exh. B          GNG's December 2003 bank statement;
Exh. C          copy of GNG check to Haskins;
Exh. D          GNG's chapter 11 bankruptcy petition;
Exh. E          Order of Dismissal in a state court proceeding;
Exh. F          Second Amended Joint Plan of Liquidation of Git-N-Go;
Exh. G          Order Confirming Second Amended Joint Plan of
Liquidation of Git-N-Go, as Modified;
Exh. H          Trust Agreement (The Git-N-Go Creditors' Trust);
Exh. I          Trustee's Complaint to Avoid Preferential Transfers and
to Recover Amount of Such Transfers;

> Exh. J      GNG's December 2003 Balance Sheet;
>
> Exh. K      GNG's Initial Report for Period 01/01/2004 -
>             01/24/2004; and
>
> Exh. L      Liquidating Trustee's Estimated Recoveries to
>             Unsecured Creditors dated 09/12/2006; and

> Exhibit 3      Answer to Complaint.

See Motion, Exhibits 1 through 3 (collectively, the "Trustee's Exhibits").  While a court may consider any materials which would be admissible at trial,  "[a]s a general rule, documents which are submitted in support of a Motion for Summary Judgment must be authenticated by an affidavit.  However, uncertified documents may be considered by the Court if not challenged."  Cinocca v. Baxter Labs., Inc., 400 F. Supp. 527, 529-530 (E.D. Okla. 1975)(citation omitted).  The Trustee submitted an affidavit authenticating the Trustee's Exhibits in accordance with Rule 56(e).  Haskins has not objected to the Trustee's Exhibits or challenged their admissibility.  Accordingly, the Court finds that the Trustee's Exhibits should be considered.

The Trustee's Motion includes a Statement of Material Undisputed Facts ("Statement of Facts") consisting of sixteen numbered paragraphs of factual allegations with citations to the Trustee's Exhibits followed by a section of Argument and Authorities, thus complying with Rule 56(e) and Local Rule 7056(a).[4]  However, Haskins's Response does not comply

---

[4]References to the Trustee's Statement of Facts are identified as "Stmt. ¶" and references to the Trustee's Exhibits are identified as "Exh."

with Rule 56(e) or Local Rule 7056(b).[5]  The materials submitted by Haskins in support of

her Response were not verified by an affidavit in accordance with Rule 56(e).  Haskins also

failed to begin her Response with "a section stating, by paragraph number, each of the

[Trustee's] facts to which [Haskins] contends a genuine issue exists" and Haskins failed to

"refer with particularity to those portions of affidavits, discovery materials, pleadings, and

other relevant parts of the record before the Court upon which [she] relies to dispute the

[Trustee's] fact[s]" in accordance with Local Rule 7056(b).  Further, Haskins failed to set

forth additional material facts that she contends are relevant in separately numbered

paragraphs with particular references to those portions of an affidavit, discovery materials

and other relevant parts of the record upon which she relies in accordance with Local Rule

7056(b).  Haskins failed to specifically controvert any of the sixteen numbered paragraphs

in the Trustee's Statement of Facts with supporting evidence.[6]  To the extent that Haskins

attempted to controvert statements of fact, she asserted conclusory allegations and general

---

[5] On October 13, 2006, Haskins filed her original Response to Trustee's Motion (the "Original Response").  On October 18, 2006, the Court entered an order striking the Original Response because it failed to comply with Local Rule 7056(b).  On October 24, 2006, Haskins merely re-filed the Original Response, which is referred to herein as the Response.

[6] In her Response, Haskins stated that the "Debtor wrote a check to Defendant on the 10th of December, 2003[,]" that it was "negotiated on the [sic] December 26, 2003[,]" and that "[t]his disputes [Trustee's Stmt. ¶ 4] as it is not what was given this Court in Plaintiff's Exhibit 'C.'"   Response at ¶ 1.  However, Haskins's statements of fact regarding the check do not controvert the Trustee's statement that GNG "paid" $29,000 to Haskins on December 29, 2003, which fact is supported by Trustee's Exhibit B.  See infra note 13.

denials without providing evidentiary support.[7]  Thus, all material facts set forth in the

Trustee's Statement of Facts will be deemed admitted for the purpose of summary judgment

pursuant to L.R. 7056(b) except to the extent that they are unsupported.[8]  Accordingly, the

Court need only determine whether the Trustee's evidentiary support entitles her to judgment

on her claims as a matter of law.  See Fed. R. Civ. P. 56(c) and (e); see e.g., Garrett v.

Vaughan (In re Vaughan), 342 B.R. 385 (Table) (B.A.P. 10th Cir. 2006)(in decision

designated as nonbinding precedent, the Tenth Circuit BAP ruled that because non-movants

failed to comply with summary judgment standards and to "effectively" controvert the

movant's statement of facts, there was no genuine issue of material fact to preclude summary

judgment).

---

[7] In paragraph 2 of her Response, Haskins stated that "[p]ayments or transfers made
to [her] in this matter were contemporaneous for consideration with the Debtor" and that
"[t]his disputes Plaintiff's 'material undisputed fact' No. 5."  Response at 2.  However,
"conclusory allegations without specific supporting facts have no probative value."  Nichols
v. Hurley, 921 F.2d 1101, 1113 (10th Cir. 1990)(citation omitted).  In paragraph 6 of her
Response, Haskins stated that "[r]eality disputes all the 'material undisputed facts'
enumerated by [the Trustee]."  Response at 3.  "[A] party opposing a properly supported
motion for summary judgment may not rest on mere allegations or denials of his pleading,
but must set forth specific facts showing that there is a genuine issue for trial."  Liberty
Lobby, 477 U.S. at 256.  The mere existence of some alleged factual dispute between parties
will not defeat an otherwise properly supported motion for summary judgment. See id.

[8] While the Court is not to weigh evidence when considering a motion for summary
judgment, "the Court has an obligation to confirm that materials referenced as supporting the
existence of an undisputed fact do actually support that fact."  Banner Oil Co. v. Bryson (In
re Bryson), 187 B.R. 939, 946 n.8 (Bankr. N.D. Ill. 1995)(citations omitted).

The following material facts are supported by admissible evidence, or are a matter of record in this Court, and are not countered by admissible evidence to create a genuine issue of fact:

Haskins is a former employee of Git-N-Go, Inc. ("GNG").  Exh. 1 at 3.  On or about December 30, 1998, GNG terminated Haskins's employment.  Exh. A at 1.  On November 21, 2001, Haskins filed a petition against GNG in the District Court in and for Tulsa County, Oklahoma, alleging retaliation and wrongful termination (the "Haskins lawsuit").  Exh. A. In December 2003, the parties settled the Haskins lawsuit for $29,000.  See Exh. 2 at ¶ 4, Exh. B and C.  GNG issued a check to Haskins (Check No. 79574) dated December 10, 2003, in the amount of $29,000.  See id.  Haskins endorsed the check on or about December 23, 2003, and funds in the amount of $29,000 were transferred from GNG's bank account to Haskins on December 29, 2003 (sometimes hereinafter referred to as the "Transfer").  See id.  As of December 2003, GNG's total assets were $25,010,220.87 and its total liabilities were $28,094,729.85.  Exh. 2 at ¶ 14, Exh. J.  On January 30, 2004, GNG filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").  Main Doc. 1.  On February 12, 2004, Haskins dismissed the Haskins lawsuit.  Exh. 2 at ¶ 5, Exh. E.  On August 11, 2005, GNG, as debtor-in-possession, and the Official Committee of Unsecured Creditors filed the Second Amended Joint Plan of Liquidation of Git-N-Go, Inc., which plan was subsequently modified on October 27, 2005 (Main Doc. 1433), and further modified on November 8, 2005 (Main Doc. 1440) (as modified, the "Plan").  See Exh. 2 at ¶ 7, Exh. F. On November 9, 2005, the Court entered an order confirming the Plan.  Main Doc. 1446.

Pursuant to the terms of the Plan, Marla C. Reynolds was appointed as the trustee of the trust established under the Plan to liquidate trust assets and to seek and object to claims for the benefit of the Class 3 Allowed General Unsecured Claims and Class 4 Subordinated claims. <u>See</u> Exh. 2 at ¶ 9, Exh. F at 7, 12, 13. The Trustee acquired sole and exclusive authority to enforce any claims, rights or causes of action that GNG or its chapter 11 estate may hold against any person or entity including causes of action under 11 U.S.C. §§ 547 and 550. Exh. 2 at ¶ 11, Exhs. F and G. Under the Plan, holders of allowed unsecured claims against GNG's bankruptcy estate will receive approximately thirteen percent (13%) or thirteen cents on the dollar for their allowed claims. Exh. 2 at ¶ 15, Exh. L.

## V.     Conclusions of law

### A.     Avoidance under Section 547(b)

Section 547 provides in pertinent part:

> (b)  Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
>     (A) on or within 90 days before the date fo the filing of the petition;
>                        *  *  *
> (5) that enables the creditor to receive more than such creditor would receive if–
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).  The purpose of a trustee's avoidance power is to insure that all creditors receive equal distribution from available assets.  Gill v. Winn (In re Perma Pac. Props.), 983 F.2d 964, 968 (10th Cir. 1992)(citation omitted).  Pursuant to Section 547(g), the Trustee "has the burden of proving the avoidability of a transfer under subsection (b) of this section[.]"  11 U.S.C. § 547(g).  To prevail on her Motion to avoid a preferential transfer, the Trustee must establish each of the elements of Section 547(b).

### 1.    Transfer made to a creditor on account of an antecedent debt

The Trustee established that GNG paid Haskins $29,000 to settle the Haskins lawsuit, which payment was "to or for the benefit of a creditor . . . for or on account of an antecedent debt owed by [GNG] before such transfer was made."  11 U.S.C. § 547(b)(1) and (2).  Haskins argued that the Transfer from GNG to Haskins was not a preferential transfer because Haskins was not a creditor of GNG.  Response at 3.  Haskins further asserted that because GNG did not admit to any liability with respect to the Haskins lawsuit, the payment was not on account of an antecedent debt.  Id. at 2-3.  Haskins did not set forth any additional supported facts or authority to support her contentions.  Haskins's conclusory assertions, without something more, do not give rise to a disputed material fact.

"An agreement in settlement of litigation necessarily arises out of a pre-existing dispute between the parties.  If that pre-existing dispute constitutes a debt for bankruptcy purposes then a payment in settlement of that dispute is on account of an antecedent debt."  Phoenix Rest. Group, Inc. v. Fuller, Fuller & Assocs., P.A. (In re Phoenix Rest. Group, Inc.), 316 B.R. 671, 675 (Bankr. M.D. Tenn. 2004).  The Bankruptcy Code defines a "debt" as

"liability on a claim." 11 U.S.C. § 101(12).  A "claim," in turn, is broadly defined as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A).[9]  "Accordingly, the concept of a debt and a claim are coextensive under the Code and a debtor incurs a debt to the creditor for purposes of Section 547(b)(2) as soon as the creditor would have a claim against the debtor's estate."  Peltz v. Edward C. Vancil, Inc. (In re Bridge Info. Sys., Inc.), 474 F.3d 1063, 1067 (8th Cir. 2007)(citation omitted).  A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10)(A). When a creditor has a claim against a debtor, even if the claim is unliquidated, unfixed, or contingent, the debtor has incurred a debt to the creditor for purposes of bankruptcy law.  See Wilcox v. CSX Corp., 2003 UT 21, 70 P.3d 85, 93 (2003)(citation omitted).  Here, Haskins's claims against GNG arose in 1998 when GNG allegedly retaliated and/or wrongfully terminated Haskins's employment.[10]  GNG's debt to Haskins was incurred at the time Haskins's claims arose in 1998 and not upon execution of a settlement agreement between

---

[9] "Under the Code, the fact that the tort claim may be unliquidated or disputed does not mean that it is not a claim."  2 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 101.05[6], at 101-52 (15th ed. rev. 2001).

[10] A later compromise of the claim does not affect the time when the debt first arose. See Upstairs Gallery, Inc. v. Macklowe W. Dev. Co. (In re Upstairs Gallery, Inc.), 167 B.R. 915, 918 (B.A.P. 9th Cir. 1994).

the parties with respect to such claims.[11]  Although the facts do not establish the exact date

in 1998 that Haskins was terminated by GNG, Haskins filed the Haskins lawsuit on

November 21, 2001.  The transfer occurred in December 2003.  Thus, the Transfer was "to

. . . a creditor" "for or on account of an antecedent debt" because Haskins's claims against

GNG constituted a "debt," and the debt was "incurred before the transfer."

       **2.       Transfer made while the debtor was insolvent**

     A corporation is "insolvent" when it has a "financial condition such that the sum of

such entity's debts is greater than all of such entity's property, at a fair valuation," exclusive

of fraudulently transferred or exempt assets.  11 U.S.C. § 101(32)(A).  Section 547(f)

provides that "[f]or purposes of this section, the debtor is presumed to have been insolvent

on and during the 90 days immediately preceding the date of the filing of the petition."  11

U.S.C. § 547(f).  The Trustee established that during December 2003, at the time the Transfer

was made to Haskins, GNG's total assets were $25,010,220.87 and its total liabilities were

---

[11] "The fact that the debt would have extended into the future but for the settlement agreement does not change the antecedent nature of the debt."  Upstairs Gallery, 167 B.R. at 918.  See also Levine v. Custom Carpet Shop, Inc. (In re Flooring Am., Inc.), 302 B.R. 394, 402 (Bankr. N.D. Ga. 2003) (a claim, and therefore a debt, arose when the debtor allegedly breached a Franchise Agreement).

$28,094,789.85.  Thus, GNG was insolvent in December 2003 for purposes of 11 U.S.C. § 547(b)(3).  Haskins did not confute that GNG was insolvent at the time of the Transfer.[12]

### 3.      Transfer was made on or within 90 days before the Petition Date

It is undisputed that the Transfer of $29,000 from GNG to Haskins occurred in December 2003, which was within ninety days of the Petition Date.[13]

### 4.      Transfer enabled creditor to receive more than such creditor would receive if the case were a case under chapter 7, the transfer had not been made, and such creditor received payment of such debt to the extent provided by the provisions of this title

If the Haskins lawsuit had not been settled, Haskins's tort action claim would be considered a prepetition, unliquidated, contingent, and unsecured claim.  Pursuant to the Plan, Haskins, as an unsecured creditor, would be entitled to receive a pro rata share of the distribution to unsecured creditors.  "[I]n determining the amount that the transfer enables the creditor to receive, such creditor must be charged with the value of what was transferred *plus* any additional amount that he would be entitled to receive from a Chapter 7 liquidation."

---

[12] In her Response, Haskins asserted that she "did not know or have reason to know that the Debtor was insolvent."  Even if deemed admitted, this fact is not material.

[13] Haskins asserted that the date of the Transfer is disputed because the check was dated December 10, 2003, and it was "negotiated on December 26th, 2003."  Whether the Transfer occurred on the date the check was written, negotiated and/or paid (December 10, 26, or 29, respectively) has no effect on the disposition of this matter.  Each of such dates were "on or within 90 days before the date of the filing of the petition[.]"  11 U.S.C. § 547(b)(4)(A).  The Supreme Court has held that the "transfer" of a debtor's property occurs, for purposes of Section 547(b), on the day the check is honored by the drawee bank.  Barnhill v. Johnson, 503 U.S. 393, 400 (1992).  Accordingly, the Transfer occurred on December 29, 2003, when the funds were withdrawn from GNG's bank account.

Elliot v. Frontier Props. (In re Lewis W. Shurtleff, Inc.), 778 F.2d 1416, 1421 (9th Cir. 1985), *applying* Palmer Clay Prods. Co. v. Brown, 297 U.S. 227, 229 (1936); see also 5 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 547.03[7], at 547-45 (15th ed. Rev. 2001).  "As a matter of general principle, unless creditors will receive a 100 percent distribution, any unsecured creditor who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation."  Hays v. DMAC Inv., Inc. (In re RDM Sports Group, Inc.), 250 B.R. 805, 814 (Bankr. N.D. Ga. 2000)(internal quotation and citations omitted).  It is undisputed that pursuant to the Plan, none of GNG's unsecured creditors will receive one hundred cents on the dollar for their claims against GNG's estate.  Accordingly, Haskins received more than she would have had the Transfer not been made.

In light of the foregoing analysis, the Court finds that the Trustee has established all of the elements of a preferential transfer under Section 547(b).  Thus, unless Haskins sustains her burden under Section 547(g) to establish that a genuine issue of fact exists with respect to an exception to avoidability under Section 547(c), the Transfer is an avoidable preference.

### B.     Section 547(c)(1) Contemporaneous Exchange for New Value Exception

Haskins contends that the Transfer is not avoidable pursuant to Section 547(c)(1) because the Transfer was a contemporaneous exchange for new value.  Section 547(c)(1) provides that a trustee may not avoid a preferential transfer to the extent that the transfer was–

> (A) intended by the debtor and the creditor . . . to be a contemporaneous
>     exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange[.]

17

11 U.S.C. § 547(c)(1).  New value is defined as –

> money or money's worth in goods, services, or new credit, or release by
> a transferee of property previously transferred to such transferee in a
> transaction that is neither void nor voidable by the . . . trustee under any
> applicable law . . . but does not include an obligation substituted for an
> existing obligation.

11 U.S.C. § 547(a)(2).  "Section 547(c)(1) protects transfers that do not result in a

diminution of the estate - unsecured creditors are not harmed by the targeted transfer if the

estate was replenished by an infusion of assets that are of roughly equal value to those that

were transferred."[14]  Manchester v. First Bank & Trust Co. (In re Moses), 256 B.R. 641, 652

(B.A.P. 10th Cir. 2000)(citations omitted).  "Thus, for § 547(c)(1) to apply, the value given

for the transfer must actually and in real terms enhance the worth of debtor's estate so as to

offset the reduction in the estate the transfer caused."  Lubman v. C.A. Guard Masonry

Contractor, Inc. (In re Gem Constr. Corp.), 262 B.R. 638, 645-46 (Bankr. E.D. Va.

2000)(citation omitted).  Because Section 547 expressly protects transfers only "to the

extent" the transfer was for new value, "[a] court must measure the value given to the

creditor and the new value given to the debtor in determining the extent to which the trustee

may avoid a contemporaneous exchange."  Lowrey v. U.P.G., Inc. (In re Robinson Bros.

Drilling, Inc.), 877 F.2d 32, 34 (10th Cir. 1989)(citations omitted).  "[A] party seeking the

shelter of section 547(c)(1) must prove the specific measure of the new value given to the

---

[14]  "The purpose of the contemporaneous exchange exception . . . is to encourage
creditors to continue to deal with troubled debtors without fear that they will have to disgorge
payments received for value given."  Gonzales v. DPI Food Prods. Co. (In re Furrs
Supermarkets, Inc.), 296 B.R. 33, 39 (Bankr. D.N.M. 2003).

debtor in the exchange." Id., *quoting* Jet Florida, Inc. v. Am. Airlines, Inc. (In re Jet Florida Sys., Inc.), 861 F.2d 1556, 1558 (11th Cir. 1988).  "Moreover, the Bankruptcy Code's definition of the term "new value" implies that the creditor must prove the specific valuation in "money or money's worth in goods, services, or new credit."  Id. (citation omitted).  "A vast majority of courts agree that 'new value' for purposes of § 547 must be something of tangible economic value."  Phoenix Rest. Group, Inc. v. Fuller, Fuller & Assocs., P.A. (In re Phoenix Rest. Group, Inc.), 316 B.R. 671, 679 (Bankr. M.D. Tenn. 2004)(citations omitted); see also Peltz v. New Age Consulting Servs., Inc., 279 B.R. 99 (Bankr. D. Del. 2002)(release given in settlement of state court litigation did not provide any new value for purposes of an exception to preference recovery).

Under Section 547(c)(1) and (g), Haskins must establish that: (1) she advanced new value to GNG in exchange for the payment (and the extent of the value advanced); (2) the Transfer was "substantially contemporaneous" with the tender of new value to GNG; and (3) GNG and Haskins specifically intended for the Transfer to constitute an exchange for the new value.[15]  See Davis v. I.P.H.F.H.A., Inc. (In re Amarillo Mesquite Grill, Inc.), 355 B.R. 826 (Bankr. D. Kan. 2006).

Haskins did not submit properly supported facts to establish each of the elements of Section 547(c)(1).  Haskins failed to offer any admissible evidence that would support a

_____

[15] Haskins, as "the creditor or party in interest against whom recovery or avoidance is sought[,] has the burden of proving the nonavoidability of a transfer under subsection (c) of this section."  11 U.S.C. § 547(g).

Section 547(c) contemporaneous exchange defense to a trustee's avoidance powers under Section 547(b).  Haskins argued that the settlement and dismissal of the Haskins lawsuit constitutes a contemporaneous exchange for new value.  More specifically, Haskins asserted that she provided new value to GNG in exchange for the $29,000 transfer because she "agreed to confidentiality," "assume[d] liability for FICA matching," "agree[d] to no future employment," and that she "release[d] Debtor from liability under the ADEA, FMLA, Title VII, NLRA, etc."  Response at 5.

Generally, "forbearance from exercising pre-existing rights does not constitute new value."  Wilcox, 70 P.3d at 95, *citing* Am. Bank v. Leasing Serv. Corp. (In re Air Conditioning, Inc. of Stuart), 845 F. 2d 293, 298 (11th Cir. 1988)(citations omitted).  Further, a payment applied to past debt in exchange for new value does not fall within the contemporaneous exchange exception to a trustee's avoidance power.  See Computer Personalities Sys., Inc. v. Aspect Computer (In re Computer Personalities Sys., Inc.), 320 B.R. 812, 818 (E.D. Pa. 2005)(citations omitted).[16]  Here, the Transfer was made in order to settle the Haskins lawsuit, which payment constituted satisfaction of a past debt.  Haskins's release of pending claims or future claims with respect to pre-existing rights does not constitute "money or money's worth in goods, services, or new credit" under Section

---

[16] "It is well settled that a payment applied to a past debt in exchange for new value does not fall within § 547(c)(1).  A seller who conditions continued deliveries to a debtor on the debtor's payment of old invoices cannot claim the protection of § 547(c)(1) even though the debtor's payment to seller and the seller's transfer of property to the buyer occurred contemporaneously."  Computer Personalities, 320 B.R. at 818 (citations omitted).

547(c)(1).  See Upstairs Gallery, Inc. v. Macklowe West Dev. Co. (In re Upstairs Gallery, Inc.), 167 B.R. 915, 919 (B.A.P. 9th Cir. 1994)(stating, "[m]erely because the parties settled and this settlement resulted in payment to the creditor, it does not follow that the settlement creates a new obligation for which the payment may be deemed outside the scope of § 547(b)(2) and as a 'contemporaneous exchange for new value' under § 547(c)(1)").  Moreover, the settlement obligations regarding confidentiality and future employment are not "money or money's worth in goods, services or new credit" and appear to be obligations substituted for another existing obligation, which are expressly excluded from the definition of new value in the Bankruptcy Code.

Without providing additional admissible facts and evidence to support her contentions, Haskins relies on only one case, Lewis v. Diethorn, 893 F.2d 648 (3d Cir. 1990), to support her contentions.  Haskins asserted that Lewis "stands for the proposition that such a release of a very disputed claim is not payment for an antecedent debt, but a contemporaneous exchange to cut off further litigation."  Response at 6.  In Lewis, the court found that the debtor's prepetition settlement payment was not on account of an antecedent debt and that it constituted a contemporaneous exchange for new value.  However, the court based its opinion on the fact that the creditor also agreed to remove a lis pendens against real estate owned by the debtor, which increased the value of the property and therefore constituted new value.  "Lewis . . . [has] been soundly criticized and [is] inconsistent with the majority of federal cases dealing with the 'exchange for new value' defense[.]"  Wilcox v. CSX Corp., 2003 UT 21, 70 P.3d 85, 97 (2003); see also In re Peltz v. Edward C. Vancil, Inc. (Bridge

21

Info. Sys., Inc.), 302 B.R. 41, 47 (Bankr. E.D. Mo. 2003), *quoting, in part*, Bioplasty, Inc.
v. First Trust Nat'l Assoc. (In re Bioplasty), 155 B.R. 495, 498 (Bankr. D. Minn. 1993)(The
"*Lewis* opinion is inconsistent with the Code's broad definitions of both a claim and a debt"
and it "'contains no analysis whatsoever, and simply makes a conclusory statement that the
payments were made for one reason rather than another.' There is simply no analysis in
*Lewis* as to why a debtor does not incur a debt until the parties' execute a settlement
agreement when the Code's definition of a debt includes the debtor's remote and contingent
obligations."). The factual differences aside, Lewis is not binding authority in this Court, and
the Court declines to follow it.

Haskins failed to offer any admissible facts or evidence that would support a Section
547(c) contemporaneous exchange defense. Haskins failed to establish that she provided
GNG with new value. Moreover, even if she established that she provided some "new
value," Haskins failed to establish the quantum of that value. GNG incurred a debt to Haskins
long before the parties settled the Haskins lawsuit. See Upstairs Gallery, 167 B.R. at 918 ("A
later compromise of the claim does not affect the time when the debt first arose.")(citation
omitted). The Transfer was a settlement payment that Haskins received for or on account of
an antecedent debt and was not a contemporaneous exchange for new value. In light of the
foregoing analysis, the Court finds that the preferential transfer from GNG to Haskins is not
excepted from the Trustee's avoidance powers under Section 547(c)(1).

### C.    Recovery of Avoided Transfer Pursuant to Section 550

Section 550 permits a trustee to recover the property that is the subject of a transfer avoided under Section 547 "for the benefit of the estate."   Section 550(a) provides in pertinent part:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–
>
> (1) the initial transferee of such transfer . . . [.]

11 U.S.C. § 550(a).   Under Section 550(a)(1), an initial recipient of funds is an initial transferee if there is a debtor-creditor relationship between the initial recipient and the transferor that the transfer of the funds satisfies.  It is undisputed that Haskins was the initial recipient of the Transfer.  As discussed previously, Haskins was a creditor of GNG based on GNG's liability for the claims asserted in the Haskins lawsuit which liability constitutes a debt.  The Transfer satisfied such debt.  Thus, the Trustee may recover the Transfer for the benefit of the estate pursuant to 11 U.S.C. § 550(a).

The Trustee has established all of the elements of Sections 547(b) and 550(a) of the Bankruptcy Code.  The Court finds that there are no material facts in dispute, and therefore summary judgment is proper.  Accordingly, the Trustee is entitled to avoid the transfer of $29,000 under 11 U.S.C. § 547(b) and to recover the same for the benefit of the estate under 11 U.S.C. § 550.

## V.    Conclusion

For the reasons stated herein, the Plaintiff's Motion for Summary Judgment is granted.

A separate judgment shall be entered in favor of the Plaintiff and against the Defendant.

**SO ORDERED** this 25th day of September, 2007.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

24